DAIRYLAND INSURANCE COMPANY,
Plaintiff and Appellant,

v.

James C. HOLDER; Barbara Ann Holder;
James C. Holder as Guardian ad Litem
for Jeffery Holder, Wendy Holder and
Justin Holder, Minors; and William
Charles Dennis, Defendants and Re-
spondents.

No. 17311.

Supreme Court of Utah.

Jan. 25, 1982.

L. L. Summerhays and Roger H. Bullock of Strong & Hanni, Salt Lake City, for plaintiff and appellant.

Stephen G. Morgan of Morgan, Scalley & Davis and Joseph C. Fratto of Fratto & Fratto, Salt Lake City, for defendants and respondents.

HALL, Chief Justice:

Plaintiff insurance company contests a declaratory judgment holding it liable to defendants James C. Holder, Barbara Ann Holder and their children for damages caused when the Holders' vehicle collided with an automobile driven by defendant William Charles Dennis. The issue presented by this appeal is whether Sandra Freestone, the owner of the automobile driven by Dennis, was insured by plaintiff at the time of the collision.

On February 13, 1978, Sandra Freestone visited the office of Robert Bowen, an agent of plaintiff company, for the purpose of obtaining automobile insurance. On that day, she and Bowen both signed an insurance application which contained the following statement: "I agree that no coverage can be bound unless I pay at least two months' premium with this application." Bowen claims that Freestone never paid him the required two-month premium, which would have amounted to $40. Defendants dispute this claim on the basis of notations by Bowen on the application which indicate that the premium was paid. It is undisputed that Bowen forwarded the application to plaintiff's office two days later unaccompanied by any premium payment.

On February 25, 1978, 12 days after the application date, defendant Dennis collided with defendants Holder while driving Freestone's automobile. Freestone, a passenger in her own car, was severely injured in the accident and died two days later. Members of the Holder family were also injured. The parties stipulated that Dennis had Freestone's permission to drive her car and that if Freestone was insured by plaintiff at the time of the accident, Dennis was covered by her policy.

On February 27, after learning of the accident, Bowen, out of "sympathy for the Freestones" and a desire to "help them," purchased a money order payable to plaintiff in the amount of $40, backdated it "February 11, 1978," and signed Freestone's name on it, followed by his own. On that day or the following day, he cashed this money order himself. He testified that he did so because "I realized that I had backdated that and realized the implication of backdating it. Therefore, I cashed it."

Sometime between March 1 and March 3, Bowen purchased a second money order payable to plaintiff, dated it "March 1, 1978," signed it in behalf of Freestone and wrote the words "Replacement Money Order" at the bottom. Bowen took this money order to plaintiff and on March 10, plaintiff prepared an insurance policy in Freestone's name bearing an effective date of February 13, 1978, and an expiration date of March 26, 1978.

On March 29, after having learned of Freestone's accident, plaintiff cancelled her policy, issuing a replacement policy sheet on which the expiration date had been changed to February 13, 1978, the stated effective date. Plaintiff sent Bowen a letter advising him of the cancellation and a refund of the $40 premium payment.

The Holders subsequently filed suit against Dennis, alleging negligence in the operation of Freestone's automobile and claiming damages for injuries sustained in the accident. Plaintiff then brought this action, seeking a declaratory judgment to the effect that it was not responsible to indemnify Dennis for any damages awarded against him. Upon trial of the matter, the jury rendered a special verdict stating that at the time of the accident plaintiff had been "obligated to issue an automobile insurance policy covering Sandra Freestone." The court then entered judgment for defendants.

Plaintiff appeals on three grounds: 1) insufficiency of the evidence, 2) improper exclusion of testimony, and 3) improper instruction of the jury.

■ As to the first contention, plaintiff correctly states the standard for review of a jury verdict as follows:

If there is any substantial competent evidence upon which a jury acting fairly and reasonably could make the finding it should stand. But if the finding is so plainly unreasonable as to convince the court that no jury acting fairly and reasonably could make the finding, it cannot be said to be supported by substantial evidence.

*Seybold v. Union Pacific Railroad Co.*, 121 Utah 61, 239 P.2d 174 (1951).

■ Plaintiff asserts that the jury could not reasonably have found that plaintiff had an insurance obligation to Freestone at the time of the accident. It characterizes defendant's evidence as a "mere scintilla" based on speculation and inferences. However, defendants presented documentary and testimonial evidence to show that Freestone's insurance coverage began on February 13, 1978.

The insurance application signed by both Freestone and Bowen on February 13, 1978, contains a printed coverage chart which includes the words "Amount Submitted" followed by a space containing the handwritten figure "$40.00," which Bowen admits he entered at the time of the application. Immediately above the chart appear the words, "No coverage unless checked or premium shown." Bowen testified that the information contained in applications such as this one constitutes his sole record of whether premiums have been paid. It was thus reasonable for the jury to have interpreted his entry of the $40 figure on the chart as an indication that Freestone had paid this amount and that coverage was then in effect.

Other language in the application supports the jury's conclusion that it was intended to bind plaintiff as of the application date. The application begins with the statement, "Coverage to be effective: Date: 2/13/78 Time: 6:00 P.M." It also contains the following stipulations:

I agree that no coverage can be bound unless I pay at least two months' premium with this application, and that *coverage will be bound no earlier than the time the application is signed.*

\* \* \* \* \* \*

I understand that I will not be covered if this application contains any false statement, omission or misrepresentation . . . . [Emphasis added.]

The application gives no indication that coverage is contingent on receipt of payment by plaintiff itself, but requires only that the applicant "pay at least two months' premium with this application." A reasonable interpretation of the provision designating February 13, 1978, as the effective date and of the careful specification of conditions relating to coverage is that the parties intended coverage to begin at the time of signing provided that the specified conditions were met.

Defendants presented exhibits and testimony by a former employee of plaintiff which convincingly show that Bowen had authority to bind coverage in behalf of plaintiff and that plaintiff customarily insured its clients from the date of application with its agents, even if plaintiff itself did not receive application or payment until later. In Freestone's particular case, plaintiff issued a policy on March 10, 1978, but listed the effective date as February 13, 1978, in recognition of the agreement which Bowen had previously made with Freestone on its behalf. According to the testimony of plaintiff's former employee, this procedure allowed plaintiff to charge premiums beginning with the stated effective date rather than the date when the policy was issued. Having chosen to benefit in this way through its adoption of the February 13, 1978, effective date, plaintiff must now bear the responsibility for coverage of Freestone as of that date. At the time when plaintiff learned of Freestone's death, it was too late to reconsider this decision and attempt retroactively to cancel her policy.

It is clear that defendants' evidence concerning plaintiff's and Bowen's operating procedures and the terms of the application agreement between Freestone and Bowen constituted more than a "mere scintilla." The jury reasonably could have reached its special verdict on the basis of this substantial evidence notwithstanding Bowen's testimony concerning his actions and motives.

■ Plaintiff next argues that the trial court erred in excluding evidence concerning statements made by Freestone to Bowen in two conversations relating to her insurance application. These statements allegedly would show that Freestone had never paid any money to Bowen and that she was aware of her responsibility to pay him in order to secure coverage. The trial court, characterizing these statements as hearsay, refused to permit Bowen to testify concerning them. Plaintiff argues that the statements are not hearsay because they were not offered to prove that what Freestone said to Bowen was true. It argues further that if the statements were hearsay, they would be admissible as declarations against Freestone's interest.

Plaintiff acknowledges that even if this Court were to determine that the trial court had erred in excluding the testimony in question, such error would not necessarily constitute grounds for reversal. Rule 61, Utah Rules of Civil Procedure, provides:

> No error in either the admission or the exclusion of evidence . . . is ground for granting a new trial or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Plaintiff has failed to show that introduction of the excluded testimony would have enhanced its case in any way. Bowen did testify concerning his conversations with Freestone, detailing the information which he had conveyed to her and omitting only the actual statements made by her in response. The introduction of Freestone's responses would have shown nothing which Bowen's own statements to Freestone did not already show. Bowen testified that he clearly informed Freestone of her obligation to pay a two-month premium in order to obtain coverage and that he called her attention to the language printed on the application which made coverage contingent on such payment. He testified repeatedly that Freestone never paid him the premium money and that he never agreed to accept any substitute arrangement with respect to payment. Testimony by Bowen as to the exact content of her replies, as reported in Bowen's deposition, would have given no further support to these claims and would have been repetitious. There is no conceivable reason why the jury would have found Bowen's secondhand report of Freestone's statements any more persuasive than his testimony concerning his own statements to her on the same subject.

Plaintiff does not clearly specify the purpose for which it sought to present the excluded testimony; nor does it explain the manner in which it claims to have been prejudiced by the exclusion. Plaintiff has shown no reason why the trial court's action, even if determined to be erroneous, was "inconsistent with substantial justice" as required by Rule 61. Without determining whether or not this exclusion by the court constituted error, we hold that such an error would have been harmless under the quoted rule.

■ Plaintiff's final claim is that the instructions of the trial court failed sufficiently to focus the attention of the jury on the question of whether a contract existed between Freestone and plaintiff at the time of the accident. Plaintiff complains that the court's instructions allowed the jury to find plaintiff liable on the basis of actions which took place after the accident rather than on the basis of obligations created by the original application agreement. The court denied plaintiff's request for an instruction and special interrogatory to the jury on this point.

The special interrogatory submitted to the jury asked whether, at the time of the accident, plaintiff was "obligated to issue an automobile insurance policy covering Sandra Freestone." Plaintiff's requested interrogatory asked whether there was "a valid automobile insurance contract" at that time. The only difference between plaintiff's requested interrogatory and the one answered by the jury is plaintiff's reference to "a valid . . . contract" rather than to a more general "obligat[ion] to issue [a] policy." Both interrogatories expressly require a determination as of the time of the accident.

The record shows that the trial court instructed the jury that defendants had the burden of proving the existence of an insurance contract between Freestone and plaintiff and that in order to create such a contract "all terms and conditions of the contract expressly proposed by either party must be met by the other party." The court warned the jurors that "it is your duty as jurors to follow the law as the court states it to you, regardless of what you personally believe the law is or ought to be." In addition, the following specific instruction was given:

> Where an application for insurance provides that a cash payment of premium is required in order for the policy to provide coverage from the date of the application, such a provision for cash payment of the premium is a necessary condition for insurance coverage, and until the condition is complied with, there is no coverage.

The instructions given the jurors clearly informed them of their duty to consider only the evidence relating to creation of an express contract in answering the special interrogatory, rather than basing their answer on any general notions regarding an obligation on the part of plaintiff. Thus, the reference to "obligat[ion] to issue [a] policy" rather than to "a valid automobile insurance contract" made no difference to the jury's decision. The language of the special interrogatory itself required the jury to find the existence of such an obligation "as of the date of the accident" in order to arrive at its special verdict. We conclude that the instructions and interrogatory are free of error and that they appropriately presented the factual issues to the jury. Therefore, we do not disturb its verdict.

Affirmed. Costs to defendants.

STEWART, HOWE and OAKS, JJ., and CHRISTINE DURHAM, District Judge, concur.