Louis ORTIZ, Plaintiff and Appellant,

v.

GENEVA ROCK PRODUCTS, INC., Defendant and Appellee.

No. 950391–CA.

Court of Appeals of Utah.

June 12, 1997.

1215

Matt Biljanic, Midvale, for Plaintiff and Appellant.

George T. Naegle, Richards, Brandt, Miller & Nelson, Salt Lake City, for Defendant and Appellee.

Before DAVIS, P.J., WILKINS, Associate P.J., and ORME, J.

## OPINION

WILKINS, Associate Presiding Judge.

Louis Ortiz challenges the jury's verdict of no cause of action by arguing the evidence does not support it. We agree and accordingly reverse and remand for a new trial.

## BACKGROUND

■ In reviewing a jury verdict, we view the evidence in the light most favorable to it, *see Rees v. Intermountain Health Care, Inc.,* 808 P.2d 1069, 1073 (Utah 1991), and recite the facts accordingly. We "present conflicting evidence only to the extent necessary to understand the issues raised on appeal." *State v. Dunn,* 850 P.2d 1201, 1206 (Utah 1993).

On June 4, 1991, Ortiz was working as an employee of Lowell Construction Company with a crew of workers, including the driver of the truck that was pouring concrete. The driver was an employee of Geneva Rock Products, Inc. (Geneva Rock). On that day, the crew was pouring and forming concrete for sidewalks. The driver of the concrete truck would move the chute on the back of the truck so the cement would pour down the chute and onto the ground where the sidewalk was being formed. After the cement was on the ground, Ortiz would "rack the mud," which is a method of spreading the cement out and knocking it down so the next worker can then "rod" the cement flat.

While the workers were pouring and forming the cement that morning, the chute on the truck stopped working properly by "freezing up" so that it could not be moved from side to side or around objects. The lead man on the project, Gary Cisneros, notified the driver of the truck that either the chute needed to be fixed immediately or they needed to get a replacement truck.

After the truck had been driven to the next location, a mechanic, another Geneva Rock employee, arrived to fix the chute. In an attempt to fix the chute, the driver and the mechanic began manipulating the chute controls while looking only in the cab of the truck. During this time, Ortiz stood in the work area with his back to the truck. Without any warning from the driver or the mechanic, the chute suddenly swung around and hit Ortiz, knocking him approximately ten feet onto a nearby lawn.

Ortiz filed suit against Geneva Rock, claiming that as a result of the accident, he suffered extensive injuries to his spine, resulting in long term disability and extreme and ongoing pain. Ortiz claimed that as a result of these injuries, he had not been able to work in the construction field since June 4, 1991.

At the end of the trial, the jury was given a special verdict form to fill out and return. The following is the information contained in the special verdict form, including instructions given to and questions asked of the jury:

MEMBERS OF THE JURY:

Please answer the following questions from a preponderance of the evidence. If you find the evidence preponderates in favor of the issue presented, answer "yes." If you find the evidence is so equally balanced that you cannot determine a preponderance of the evidence, or if you find that the evidence preponderates against the issue presented, answer "no." Also, any damages assessed must be proven by a preponderance of the evidence.

1. Was the defendant, Geneva Rock Products, negligent as alleged by plaintiff?
 ANSWER: Yes＿＿＿＿　　No＿＿＿＿

2. Was defendant's negligence a proximate cause of the injuries sustained by the plaintiff?
 ANSWER: Yes＿＿＿＿　　No＿＿＿＿

3. Was the plaintiff contributorily negligent, as alleged by the defendant?
 ANSWER: Yes＿＿＿＿　　No＿＿＿＿

4. Was the plaintiff's negligence a proximate cause of the plaintiff's injuries?
 ANSWER: Yes＿＿＿＿　　No＿＿＿＿

5. If you have answered both Questions 1 and 4 "yes," then, and only then, answer the following question: Assuming all the negligence that proximately caused the plaintiff's injuries to total 100%, what percentage of that negligence is attributable to:

A. Plaintiff Louis Ortiz \_\_\_%
B. Defendant Geneva Rock Products \_\_\_%
 TOTAL 100%

6. If you have answered Questions 1 and 2 "yes," state the amount of special and general damages, if any, sustained by the plaintiff as a proximate result of the injuries complained of. If such questions were not answered "yes," do not answer this question.

Special Damages:
A. Past Special Damages $\_\_\_
B. Future Special Damages $\_\_\_
General Damages: $\_\_\_
 TOTAL $\_\_\_

The jury returned this form after making only one mark on the form; to the first question regarding whether Geneva Rock was negligent, the jury answered "no." As a result of this response, by which the jury found no cause of action, the trial court entered a judgment dismissing Ortiz's complaint with prejudice. Ortiz appeals.

## ANALYSIS

### Insufficient Evidence to Support Special Verdict

■ Ortiz challenges the jury's special verdict that Geneva Rock was not at all negligent by alleging that the evidence was insufficient to support it. In reviewing a jury verdict, we do not "reweigh the evidence or investigate witness credibility." *Butterfield v. Cook*, 817 P.2d 333, 337 (Utah.Ct.App. 1991). Instead, " 'we view the evidence in the light most supportive of the verdict, and assume that the jury believed those aspects of the evidence which sustain its findings and judgment.' " *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 467 (Utah 1996) (citation omitted). "Accordingly, we will 'upset a jury verdict "only upon a showing that the evidence so clearly preponderates in favor of the appellant that reasonable people would not differ on the outcome of the case." ' " *Id.* (citations omitted); *see also Dairyland Ins. Co. v. Holder*, 641 P.2d 136, 138 (Utah 1982) (stating court should uphold jury verdict unless jury's finding is " 'so plainly unreasonable as to convince the court that no jury acting fairly and reasonably could make [such a] finding' " (citation omitted)). Having considered the evidence in accordance with this standard, we cannot let the verdict stand.

■ The jury received two instructions[1] that defined "negligence." Those instructions provide:

A person has a duty to use reasonable care to avoid injuring other people or property. "Negligence" simply means the failure to use reasonable care. Reasonable care does not require extraordinary caution or exceptional skill. Reasonable care is what an ordinary, prudent person uses in similar situations.

The amount of care that is considered "reasonable" depends on the situation. You must decide what a prudent person with similar knowledge would do in a similar situation. Negligence may arise in acting or in failing to act.

. . . .

The amount of care that is considered "reasonable" depends on the situation. Some situations require more caution because a person of ordinary prudence would understand that more danger is involved. In other situations, less care is expected, such as when the risk of danger is lower or when the situation happens so suddenly that a person of ordinary prudence would not appreciate the danger.

" 'In the absence of the appearance of something persuasive to the contrary, we assume that the jurors were conscientious in performing to their duty, and that they followed the instructions of the court.' " *State v. Burk*, 839 P.2d 880, 883 (Utah.Ct.App.1992) (quoting *State v. Hodges*, 30 Utah 2d 367, 370, 517 P.2d 1322, 1324 (1974)). We therefore assume the jury followed these instructions regarding the definition of "negligence" in finding Geneva Rock was not at all negligent, and accordingly review the verdict by examining whether evidence presented at trial supports the jury's finding that Geneva Rock used reasonable care in connection with the events culminating in Ortiz's accident.

---

1. We accept the jury instructions because the parties have not challenged them on appeal. *Cf. Diston v. EnviroPak Med. Prods., Inc.*, 893 P.2d 1071, 1074 (Utah.Ct.App.1995) (accepting trial court's factual findings when unchallenged by any party).

Three witnesses for Ortiz provided testimony that does not support the verdict.[2] First, Ortiz himself testified that the driver and the mechanic did not warn him that they were working on the chute and that it might swing out.

The second witness was Gary Cisneros, who was the lead man on the project the day Ortiz was injured and who had worked in the cement business for over twenty years. Cisneros testified that it is not common practice to work on a truck while the chute is fully extended, as the mechanic and driver had done in this case. Instead, Cisneros testified, the chute should be "broken down," or taken apart, so it is not fully extended and capable of hitting things. In addition, Cisneros testified that the other possible way to avoid hitting things and people while fixing a chute is to have someone standing outside the truck acting as a lookout while work is being done on the chute. Cisernos testified that in this case, both the driver and the mechanic were looking inside rather than outside the truck while they were manipulating the chute controls. Therefore, when the chute swung towards Ortiz, neither the driver nor the mechanic shouted a warning. Cisernos also testified that although workers have a responsibility to stay out of the chute's way, the driver has a greater responsibility to ensure that the chute does not hurt any of the workers.

The third witness for Ortiz was George Padgen, who was superintendent of concrete at the time of Ortiz's accident and who had at least twenty-three years of experience working in the concrete business. Padgen testified that when he worked as a driver he usually would send a broken truck back to the shop and have a replacement truck sent out rather than having a mechanic come to the work site to fix it. Padgen testified he would not "even allow [the broken truck] to be [at the construction site]" while it was being repaired. He also testified that it is the driver's responsibility to watch out for people to be sure the chute does not hit anyone.

In defending the jury's special verdict on appeal, Geneva Rock relies on the testimony of only one witness, the mechanic, who Geneva Rock claims provided testimony supporting the jury's verdict. However, a close examination of the mechanic's testimony reveals that it did not support the jury's finding of no negligence on Geneva Rock's part. For example, although the mechanic testified he did not think he had a duty to watch out for workers while working on the chute, he would not say the driver did not have this responsibility, and he actually admitted that the driver had the duty to control the chute. Furthermore, the mechanic admitted that it would have been wiser to have taken the chute apart before he and the driver began

**2.** Geneva Rock contends that none of Ortiz's witnesses had any expertise with respect to concrete trucks, and so Ortiz failed to establish the standard of care in this case, which Geneva Rock contends had to be determined by expert witnesses. However, this argument lacks merit.

Utah law requires that "the standard of care in a trade or profession [generally] must be determined by testimony of witnesses in the same trade or profession." *Wessel v. Erickson Landscaping Co.*, 711 P.2d 250, 253 (Utah 1985). However, Utah law does not require expert testimony to establish the standard of care in every negligence case. *See Schreiter v. Wasatch Manor, Inc.*, 871 P.2d 570, 574 (Utah.Ct.App.1994). Expert testimony is especially considered unnecessary, although helpful, in cases involving trades or professions that do not require a high degree of specialized knowledge, as opposed to trades or professions that do, such as medicine, architecture, and engineering. *See id.* (stating expert testimony is unnecessary if propriety of defendant's actions is within common knowledge and experience of layman).

However, we do not reach the question of whether expert testimony was required to establish the standard of care in this case because even if it were required, that requirement was met. "The critical factor in determining the competency of an expert is whether that expert has knowledge that can assist the trier of fact in resolving the issues before it." *Wessel*, 711 P.2d at 253. Cisneros and Padgen, the two main witnesses who testified for Ortiz as to Geneva Rock's negligence, both testified that they had considerable experience working in the concrete business. Cisneros testified that he had worked in the cement business for over twenty years, and Padgen testified he had worked in the concrete business for at least twenty-three years. Because these two witnesses presented undisputed testimony that they had worked in the trade or profession at issue in this case, and they both testified regarding the safety procedures commonly used when fixing a cement chute, Ortiz did present evidence regarding the standard of care by qualified witnesses.

manipulating the controls. In addition, although Geneva Rock argues the mechanic did not see any workers when he arrived to fix the truck, this argument misrepresents the mechanic's testimony. The mechanic testified he did not see any workers when he arrived at the work site, but he also testified he did not notice whether anyone was there or not, suggesting that he did not actually make a conscientious effort to check for people. Moreover, the mechanic testified that he worked on the truck for about thirty minutes—a time period long enough to allow someone to come into the work area, even if no one had been there at the moment of his arrival. Finally, the mechanic also admitted that while he worked on the chute, neither he nor the driver checked for or gave any warnings to those around them, even though it was possible for the chute to swing out and hit someone.

After examining this testimony, we conclude that no "substantial competent evidence," *Dairyland,* 641 P.2d at 138, was presented at trial upon which a reasonable, fair jury could enter a finding of absolutely no negligence on Geneva Rock's part.[3] Therefore, we reverse and remand for a new trial.[4]

### Evidence of Prior Injuries

In addition, Ortiz seeks reversal of the verdict on the grounds that the trial court abused its discretion in admitting evidence of his previous injuries because (1) the evidence was irrelevant, and (2) even if the evidence was relevant, its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Utah R.Evid. 402 ("Evidence which is not relevant is not admissible."); *id.* 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....").

Given our resolution of Ortiz's first argument on appeal, it is not necessary for us to rule on this second argument. However, because this issue "may arise on retrial, we will address [it] for the purpose of providing guidance" to the trial court and parties on remand. *State v. Emmett,* 839 P.2d 781, 786 (Utah 1992).

 We first examine Ortiz's claim that the evidence of his prior injuries was irrelevant and therefore inadmissible under Rule 402 of the Utah Rules of Evidence. "The trial court is given considerable discretion in deciding whether or not evidence submitted is relevant." *Bambrough v. Bethers,* 552 P.2d 1286, 1290 (Utah 1976). As such, "we will find error in a relevancy ruling only if the trial court has abused its discretion." *State v. Harrison,* 805 P.2d 769, 780 (Utah.Ct.App.1991). In addition, "an erroneous evidentiary ruling will lead to reversal only if, absent the error, there is a reasonable likelihood that there would have been a more favorable result for the [appellant]." *Id.* at 781.

---

3. The arguments Geneva Rock made at trial and on appeal mainly go to the issue of comparative negligence, or in other words, whether Ortiz was more negligent than Geneva Rock. For example, in his opening statement at trial, Geneva Rock's attorney stated, "Geneva [Rock] is willing to take the responsibility that *it is due. It had some responsibility with this accident but, gee, so did Mr. Ortiz."* (Emphasis added.) In addition, in its brief on appeal, Geneva Rock states, when introducing the evidence it argues supports the special verdict, "Plaintiff ignores the overwhelming body of evidence that came out at trial regarding *the plaintiff's negligence vers[u]s the defendant's negligence."* (Emphasis added.) At the end of this argument in its brief, Geneva Rock concludes, "Based upon the overwhelming evidence of non-negligence on the part of the defendant *and negligence on the part of the plaintiff,* the jury verdict of no cause of action should not

be disturbed." (Emphasis added.) However, the issue on appeal is not whether Ortiz was more negligent than Geneva Rock, but rather whether Geneva Rock was at all negligent. Indeed, given the organization of the special verdict form, contributory negligence would not even have been an issue until the jury answered question number three.

4. As guidance to the trial court on remand, *see State v. Emmett,* 839 P.2d 781, 786 (Utah 1992), we note that it appears possible the jury actually may have found Ortiz was more negligent than Geneva Rock, but marked no negligence on the special verdict form. The need for a retrial may have been avoided by a careful and detailed jury instruction specifically explaining the difference between a finding of no negligence and a finding of greater negligence on the part of one party.

Ortiz argues that the evidence regarding his prior injuries was irrelevant and therefore inadmissible because none of the injuries was related to the injury caused by the accident, and the injuries had not rendered him unable to work. Further, Ortiz argues that, inasmuch as the evidence was introduced to prove Ortiz suffered from a pre-existing condition that was aggravated by the accident with the cement chute, the pre-existing condition was latent. Therefore, Ortiz argues, Geneva Rock would still be liable for all the damages resulting from the accident, even though he may have suffered more injuries because he had a latent, pre-existing condition. *See Biswell v. Duncan,* 742 P.2d 80, 88 (Utah.Ct.App.1987) ("[W]hen a latent condition itself does not cause pain, but that condition plus an injury brings on pain by aggravating the pre-existing condition, then the injury, not the dormant condition, is the proximate cause of the pain and disability" and the plaintiff "is entitled to recover all damages which actually and necessarily follow the injury."). Thus, Ortiz argues this evidence can have no relevance to his claim.

■ However, Ortiz fails to account for the testimony presented by Dr. Nord, a medical examiner, that called into question both Ortiz's claim that his pre-existing condition was latent and that his prior injuries alone would not have affected his ability to work. Ortiz cannot recover for damages resulting from a pre-existing condition that was not caused by Geneva Rock. *See Turner v. General Adjustment Bureau, Inc.,* 832 P.2d 62, 70 (Utah.Ct.App.1992) (" '[E]ven though it is true that one who injures another takes him as he is, nevertheless, the plaintiff may not recover damages for any pre-existing condition or disability she may have had which did not result from any fault of the defendant.' " (citation omitted)). Therefore, in light of Dr. Nord's testimony, we hold the trial court did not abuse its discretion by admitting evidence of Ortiz's prior injuries because they were relevant as to the issues of causation and damages.

■ Finally, we turn to Ortiz's claim that even if the evidence was relevant, its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, and therefore should have been excluded under Rule 403 of the Utah Rules of Evidence. As with rulings made under Rule 402, in reviewing evidentiary rulings made under Rule 403, we will not overturn a trial court's decision to admit evidence unless it abused its discretion and the error was harmful. *See State v. Larson,* 775 P.2d 415, 419 (Utah 1989).

Upon a review of the record, we hold the trial court did not abuse its discretion by refusing to exclude the disputed evidence under Rule 403. The evidence, as discussed previously, was relevant as to the issues of causation and damages, and any prejudice resulting from or misunderstanding of the evidence the jury may have had should have been eliminated by the instructions the jury received.[5] Ortiz has not shown how the relevance of this evidence was "substantially out-

5. Two of the jury instructions provided:

AGGRAVATION OF PREEXISTING CONDITIONS
Symptomatic condition
A person who has a condition or disability at the time of an injury is not entitled to recover damages for that condition or disability. However, the injured person is entitled to recover damages for any aggravation of such preexisting condition or disability proximately resulting from the injury.
This is true even if the person's condition or disability made the injured person more susceptible to the possibility of ill-effects than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury.
When a preexisting condition or disability is aggravated, damages for the condition or disability are limited to the additional injury caused by the aggravation.
and
AGGRAVATION OF PREEXISTING CONDITION
Asymptomatic condition
A person who has a latent, dormant or asymptomatic condition, or a condition to which the person is predisposed, may recover the full amount of damages that proximately result from injuries that aggravate the condition. In other words, when a latent condition does not cause pain, but that condition plus the injury brings on pain by aggravating the preexisting, dormant or asymptomatic condition, then it is the injury, not the dormant or asymptomatic condition, that is the proximate cause of pain and disability.

weighed" by the danger of prejudice or misleading the jury.

## CONCLUSION

We hold that the evidence does not support the jury's special verdict finding of no negligence on Geneva Rock's part. Accordingly, we reverse and remand for a new trial. We also hold the trial court did not abuse its discretion by admitting the evidence of Ortiz's prior injuries because the evidence was relevant and any confusion caused by the evidence should have been cured by the jury instructions.

Reversed and remanded for a new trial.

DAVIS, P.J., and ORME, J., concur.