2011 UT App 329

**Wendy HARRIS, Plaintiff and Appellant,**

v.

**SHOPKO STORES, INC., Defendant and Appellee.**

**No. 20100106–CA.**

Court of Appeals of Utah.

Sept. 29, 2011.

Michael E. Day and Nathan Whittaker, Murray, for Appellant.

Ruth A. Shapiro and Alain C. Balmanno, Salt Lake City, for Appellee.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## OPINION

VOROS, Judge:

¶1 Plaintiff Wendy Harris sued Defendant ShopKo Stores, Inc. for personal injuries sustained when she sat in a sample office chair that fell apart, causing her to fall to the floor. At the conclusion of trial, the jury awarded approximately one-third of her claimed economic damages and $1,000 in noneconomic damages. Harris contends on appeal that the jury was erroneously instructed on the apportionment of damages between those attributable to the ShopKo incident and those attributable to her various pre-existing conditions. We agree and accordingly reverse and remand.

## BACKGROUND

¶2 While shopping for an office chair in a ShopKo store, Harris sat in a display model. When she did, the chair split apart and the seat of the chair fell out from under her. She fell straight down and landed on her wrist and tailbone. Shortly after the accident, Harris went to the hospital because she felt "deep pelvic pain" and worried that "something had come loose"—possibly a complication from her previous surgery. The pain in her wrist resolved on its own after a few days, but the pain in her lower back and tailbone intensified over time.

¶3 Harris sought medical help from a family nurse practitioner, a physical therapist, a chiropractor, and various physicians. The physicians treating her observed that she was suffering from severe pain in her lower back and tailbone and that the pain radiated down the back of her leg to her knee. Even after three years, the pain did not resolve. To ease the pain, Harris tried medication, chiropractic treatment, physical therapy, and massage therapy. She was prescribed a variety of medications including a painkiller, which, according to Dr. Richard Rosenthal, a physician specializing in pain management, she sometimes took more of than the prescribed amount. She visited a physical therapist four times, went to fifty-one chiropractic sessions, and had twenty-seven massage treatments, including one couples massage with her husband.

¶4 Three years after the accident, Dr. Rosenthal diagnosed her with facet joint syndrome, an inflammation of one of the spinal joints, and coccydinia, inflammation of the tailbone. He treated her facet joint syndrome with a radio frequency lesioning treatment, which severs the nerve to the facet joint and stops the pain.

¶5 Harris sued ShopKo, alleging negligence. She also sued Office Star Products, the manufacturer of the chair, but Office Star was dismissed before trial. The case went to trial before a jury.

¶6 At trial, Dr. Rosenthal testified that it was more likely than not that Harris's pain and injuries were caused by the ShopKo accident. He testified that her medical expenses were reasonable and necessary. He also stated that he thought her pain would ultimately resolve but that she might have permanent loss of mobility in her spine and may develop sciatica or other complications from her injuries. He also testified that she had sustained permanent injuries that would require future medical care costing approximately $39,574. Dr. Rosenthal also testified that Harris had been in three prior auto accidents and had received treatment for neck pain and possibly lower back pain. He also testified that facet joint syndrome can be caused by degeneration due to aging and is not trauma related.

¶7 Harris's family practitioner testified that Harris's low back pain started after the ShopKo incident. He also testified that records from his clinic indicated that Harris had complained of fibromyalgia and depression several years before the ShopKo incident. A nurse practitioner, who is also Harris's brother, testified that he treated her for low back pain following the accident. He also testified that her X-rays following the ShopKo incident showed no fractures.

¶8 Dr. Rodney Scuderi, Harris's chiropractor, also testified. He stated that he first treated her one week after the ShopKo incident. On that day, he explained, "She had trouble even walking. Even coming back to the [examination] room took a great amount of time. She couldn't sit. It was with great difficulty to even get her down on

the table." Harris visited him fifty-one times over approximately two years, but Dr. Scuderi said that although he could sometimes provide relief, "it would never fix anything." On cross-examination, ShopKo's counsel presented Dr. Scuderi with a series of Harris's medical records from past incidents. The records showed a 1998 visit to Alta View Hospital for cervical strain and possible disc herniation; a 2001 visit to Alta View Hospital for diffuse neck pain and neck strain following a car accident; a 2002 visit to Alta View Hospital for excruciating discomfort in the lumbar area resulting in a diagnosis of left leg pain and questionable sciatica. Dr. Scuderi indicated that while it appeared that Harris had previously experienced neck and back pain, such pain was not unusual for a person of her age. He also indicated that when he first saw her, her symptoms were more consistent with someone who had suffered a recent injury than someone with chronic back pain.

¶ 9 Dr. Allan Colledge, one of Harris's former treating physicians, testified for ShopKo. He had treated Harris five times since the ShopKo incident. He agreed that Harris was in "extraordinary" pain but testified that her MRI and X-rays were "normal" and her sacroiliac joint seemed "fairly normal." He thought she had an annular tear, but the radiologist did not. He indicated that a traumatic event, such as Harris's fall at ShopKo, can cause previously asymptomatic disc degeneration to flare up and cause pain.

¶ 10 Dr. Colledge also testified concerning "delayed recovery," a term used to describe nonphysical factors that can prolong recovery. He stated that Harris had some indicators for delayed recovery, including the length of time she was in pain, the use of narcotics, and the fact that she was involved in personal injury litigation. He did not, however, think she was malingering or suffering from hysteria or hypochondriasis.

¶ 11 Ultimately, Harris presented evidence that her past medical expenses were $33,203.34. This included $17,137.50 in doctor and hospital visits, $7,539.84 in prescriptions, $768 in physical therapy visits, $1,579 in massage therapy visits, and $6,179 in chi-ropractic visits. She presented evidence that her future medical expenses were estimated at $39,574. This included visits at the pain clinic, nerve-burning procedures, annual check-ups, massage therapy, medication, and a coccyx seat support. The jury awarded $25,000 in economic damages ($15,000 in past medical expenses and $10,000 in future medical expenses) and $1,000 in noneconomic damages.

¶ 12 Harris moved for a new trial; the trial court denied the motion. Harris appeals, alleging various errors.

## ISSUE AND STANDARD OF REVIEW

¶ 13 Harris presents eleven issues on appeal. Among these is her contention that the trial court erred when it instructed the jury regarding apportioning damages between those caused by the ShopKo incident and those caused by pre-existing conditions. "A trial court's decision regarding jury instructions presents a question of law, which is reviewed for correctness." *Vitale v. Belmont Springs*, 916 P.2d 359, 361 (Utah Ct. App.1996). Because we determine that this claim of error requires reversal, we do not address the remaining issues.

## ANALYSIS

¶ 14 Harris contends that the trial court erred in instructing the jury on apportioning damages between those caused by the accident and those caused by symptomatic pre-existing conditions. This was error, she contends, because no evidence of symptomatic pre-existing conditions was adduced at trial.

¶ 15 "A trial court's ruling concerning a jury instruction is reviewed for correctness." *Paulos v. Covenant Transp., Inc.*, 2004 UT App 35, ¶ 10, 86 P.3d 752 (citation and internal quotation marks omitted). "All parties are entitled to have their theories of the case submitted to the jury in the court's instructions, provided there is competent evidence to support them." *Id.* (citation and internal quotation marks omitted). A trial court may not instruct the jury on a theory of the evidence unless a rational jury could find a factual basis in the evidence to support

that theory. *See State v. White*, 2011 UT 21, ¶ 22, 251 P.3d 820.

 ¶ 16 The parties do not dispute the rules governing pre-existing conditions in the negligence context. "[T]he plaintiff may not recover damages for any pre-existing condition or disability she may have had which did not result from any fault of the defendant, but ... she is entitled to recover damages for any injury she suffered, including any aggravation or lighting up of such a pre-existing condition or disability, which was proximately caused by the defendant's negligence." *Brunson v. Strong*, 17 Utah 2d 364, 412 P.2d 451, 453 (1966). Thus, "if the jury can find a reasonable basis for apportioning damages between a pre-existing condition and a subsequent tort, it should do so; however, if the jury finds it impossible to apportion damages, it should find that the tortfeasor is liable for the entire amount of damages." *Tingey v. Christensen*, 1999 UT 68, ¶ 15, 987 P.2d 588. These rules follow from several well-accepted principles, among them that the tortfeasor takes the victim as he finds her and that the tortfeasor bears the burden of any uncertainty in the amount of the victim's damages. *See id.* ¶ 14.

 ¶ 17 Furthermore, and most relevant here, a victim with latent, dormant, or otherwise asymptomatic pre-existing conditions stands on equal footing with a victim with no pre-existing conditions; the tortfeasor is liable for the full amount of resulting damages when its conduct aggravates or "lights up" an asymptomatic pre-existing condition:

> The rule is well settled that when a defendant's negligence aggravates or lights up a latent, dormant, or asymptomatic condition, or one to which the injured person is predisposed, the defendant is liable to the injured person for the full amount of damages which ensue, notwithstanding such diseased or weakened condition. In other words, when a latent condition itself does not cause pain, but that condition plus an injury brings on pain by aggravating the pre-existing condition, then the injury, not the dormant condition, is the proximate cause of the pain and disability. A plaintiff, therefore, is entitled to recover all damages which actually and necessarily follow the injury.

*Biswell v. Duncan*, 742 P.2d 80, 88 (Utah Ct.App.1987). The facts in *Biswell v. Duncan*, 742 P.2d 80 (Utah Ct.App.1987), parallel those at bar. Biswell was injured in a traffic accident. *See id.* at 81. Before the accident, she suffered from degenerative changes in her spine and upper back. *See id.* at 82. However, she testified that her condition had been "taken care of" and that at the time of the accident she was symptom-free. *See id.* at 82. On these facts, we held that she was entitled to a jury instruction "which clearly expresses the concept that if [the defendant's] negligence aggravated or lit up Biswell's dormant asymptomatic condition, then Biswell is entitled to recover all the damages which follow." *Id.* at 89 (emphasis omitted); *see also Ortiz v. Geneva Rock Prods., Inc.*, 939 P.2d 1213, 1219 (Utah Ct.App.1997) (rejecting plaintiff's claim that evidence of his pre-existing conditions was irrelevant, on the ground that medical testimony called into question plaintiff's claim that those pre-existing conditions were latent).[1]

¶ 18 In keeping with the foregoing principles of law, the Model Utah Jury Instructions (MUJI) offer two different jury instructions for use in cases involving pre-existing conditions. Instruction CV2018 is designed for cases involving "[a]ggravation of symptomatic pre-existing conditions." *See* MUJI 2d CV2018 (Utah State Bar 2011), *available at* http://www.utcourts.gov/resources/muji. It explains that the jury should, if it can, apportion damages between those resulting from the pre-existing condition and those resulting from the accident, and that if it cannot, it should treat all damages as caused by the accident. *See id.* CV2019 is designed to be used in cases involving aggravation of "dormant pre-existing conditions." *See id.*

---

1. A different rule applies in worker's compensation cases where the legal question is whether an injury arose out of or in the course of employment. "When analyzing whether an injury arose out of and in the course of employment, it matters not at all, from the standpoint of legal causation, whether the preexisting condition was symptomatic or asymptomatic." *Acosta v. Labor Comm'n*, 2002 UT App 67, ¶ 27, 44 P.3d 819.

CV2019. It instructs the jury that all damages caused by the accident are recoverable. *See id.*

¶ 19 Here, the trial court gave a jury instruction based on CV2019.[2] However, over Harris's objection, it also gave a jury instruction based on CV2018. That instruction stated that "[i]f Plaintiff had a physical, emotional, or mental condition before the time of the March 29, 2006 incident, she is not entitled to recover damages for that condition or disability," but that the jury should, if it is able, apportion damages between those attributable to Harris's pre-existing condition and those attributable to the Shop-Ko fall.[3] The form of the instruction is not at issue.[4] Harris objected to this instruction on the ground that no trial evidence supported a finding that she was suffering from any pain at the time of the accident. The trial court denied the objection on the basis

that evidence of pre-existing conditions had been presented:

> ShopKo presented substantial evidence that Harris's injuries could be attributed to alternative sources [other than the Shopko incident], both through cross examination of [Harris's] witnesses, and through affirmative testimony from its own witnesses. Harris had a history of neck and back pain, her medical records included references to fibromyalgia, and testimony also included the opinion that her current condition was not trauma-related, but caused by degenerative disk disease. In short, testimony was conflicted with regard to the cause of Harris's condition.

¶ 20 Harris renews her attack on appeal. She argues that ShopKo "presented no evidence that would provide a reasonable basis for determining the portion of damages attributable for each injury, and there was no

---

2. Instruction No. 24 read as follows:

 > A person who has a physical, emotional or mental condition before the time of the March 29, 2006 incident is not entitled to recover damages for that pre-existing condition or disability.
 > However, if a person has a pre-existing condition that does not cause pain or disability, but the March 29, 2006 incident causes the person to suffer physical, emotional or mental suffering, Wendy Harris may recover all damages caused by the event.

 Although modeled on MUJI CV2019, this instruction is not a model of clarity. For example, it never clearly states the governing rule that "when a defendant's negligence aggravates or lights up a latent, dormant, or asymptomatic condition, or one to which the injured person is predisposed, the defendant is liable to the injured person for the full amount of damages which ensue, notwithstanding such diseased or weakened condition." *Biswell v. Duncan*, 742 P.2d 80, 88 (Utah Ct.App.1987). A clearer instruction was given in *Ortiz v. Geneva Rock Products, Inc.*, 939 P.2d 1213 (Utah Ct.App.1997):

 > A person who has a latent, dormant or asymptomatic condition, or a condition to which the person is predisposed, may recover the full amount of damages that proximately result from injuries that aggravate the condition. In other words, when a latent condition does not cause pain, but that condition plus the injury brings on pain by aggravating the preexisting, dormant or asymptomatic condition, then it is the injury, not the dormant or asymptomatic condition, that is the proximate cause of pain and disability.

 *Id.* at 1219 n. 5.

3. Instruction No. 23 read as follows:

 > If Plaintiff had a physical, emotional, or mental condition before the time of the March 29, 2006 incident, she is not entitled to recover damages for that condition or disability. However, Plaintiff is entitled to recover damages for any aggravation of the pre-existing condition that was caused by Defendant's fault, even if Plaintiff's pre-existing condition made her more vulnerable to physical or emotional harm than the average person. This is true even if another person may not have suffered any harm from the event at all.
 > When a pre-existing condition makes the damages from injuries greater than they would have been without the condition, it is your duty to try to determine what portion of the physical, emotional or mental harm to Plaintiff was caused by the pre-existing condition and what portion was caused by the March 29, 2006 fall.
 > If you are not able to make such an apportionment, then you must conclude that the entire physical, emotional and mental harm to Plaintiff was caused by Defendant's fault.

4. The wording of the instruction was taken directly from Model Utah Jury Instruction CV2018, *see* MUJI CV2018. As a general rule, the Model Utah Jury Instructions are "merely advisory and do not necessarily represent correct statements of Utah law." *Jones v. Cyprus Plateau Mining Corp.*, 944 P.2d 357, 359 (Utah 1997). This particular rule, however, is an amended form of a jury instruction that was previously sanctioned as a correct statement of Utah law. *See Tingey v. Christensen*, 1999 UT 68, ¶¶ 12, 15, 987 P.2d 588. Neither party contends that the instruction given was not an accurate statement of Utah law.

evidence of *symptomatic* pre-existing conditions."[5] ShopKo does not dispute the law upon which Harris relies, but maintains that "there was testimony from Harris's own doctors that the pre-existing conditions could be the source of her pain."

¶ 21 In support of her challenge, Harris painstakingly marshals the evidence that, in her words, "could be construed in favor of the trial court's decision." Her effort consumes six pages of her brief containing over seventy citations to the record on appeal. She catalogs her prior episodes of low back pain; her three prior auto accidents and resulting neck and spine pain; her possible fibromyalgia; Dr. Colledge's testimony that she suffered from a suspect annular tear and disc bulge, dessication of her spinal discs, age-related degenerative disc disease, and possible facet joint syndrome; her prior diagnosis of sciatica and subsequent diagnosis of arthritis; and a variety of other less relevant medical conditions.[6] "After constructing this magnificent array of supporting evidence," Harris proceeds to "ferret out a fatal flaw in the evidence." *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991). She shows that, while the evidence of Harris's pre-existing conditions was substantial, none of it is capable of supporting a jury finding that those conditions were symptomatic on the date of the accident.

¶ 22 This conclusion is tacitly confirmed by ShopKo's brief. Although ShopKo chides Harris for the "fragment[s] of evidence Harris deigns to mention," ShopKo's own briefing of this subject contains no record citations to evidence that Harris's pre-existing conditions were symptomatic on the date of the accident. Rather, it summarizes in a single sentence the evidence of her pre-existing conditions, stating that several health professionals testified that these pre-existing conditions "could be the cause of Harris's current complaints." From this ShopKo concludes that, in contrast to *Biswell*, "there was testimony from Harris's own doctors that the pre-existing conditions could be the source of her pain." These statements, though accurate as far as they go, do not respond to Harris's central point.

 ¶ 23 As stated above, "when a defendant's negligence aggravates or lights up a latent, dormant, or asymptomatic condition, or one to which the injured person is predisposed, the defendant is liable to the injured person for the full amount of damages which ensue, notwithstanding such diseased or weakened condition." *Biswell v. Duncan*, 742 P.2d 80, 88 (Utah Ct.App.1987). "In other words, when a latent condition itself does not cause pain, but that condition plus an injury brings on pain by aggravating the pre-existing condition, then the injury, not the dormant condition, is the proximate cause of the pain and disability." *Id.* Thus, the crucial question is whether Harris's pre-existing conditions were, on the date of the accident, "latent, dormant, or asymptomatic," *see id.* Harris adamantly contends that they were. ShopKo makes no attempt to refute her contention.

¶ 24 Based on Harris's marshaling of the evidence, ShopKo's response, and our own careful examination of the record on appeal, we see no evidence capable of supporting a jury finding that Harris's pre-existing complaints of head, neck, back, and shoulder pain were anything but—to borrow *Biswell*'s phrase—"taken care of" by the time of the accident. *Id.* at 82. We therefore agree with Harris that no evidence supported the jury instruction on apportionment of damages and, consequently, that giving the instruction was error.

 ¶ 25 However, "[w]e may reverse a trial court judgment only if there is a reasonable likelihood that, absent the error, there would have been a result more favorable to the complaining party." *Robinson v. All-Star Delivery, Inc.*, 1999 UT 109, ¶ 16, 992 P.2d 969 (citation and internal quotation marks omitted). "The failure to give a jury instruction to which a party is entitled"—or in this case, giving an instruction to which a party was not entitled—"may constitute re-

---

5. Harris also frames her claim as an attack on the trial court's refusal to order a new trial based on the ground that the evidence was insufficient to support the jury's damage award.

6. We thus do not agree with ShopKo that Harris "lightly glossed over" her marshaling burden.

versible error only if it tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law." *Id.* As in *Robinson v. All-Star Delivery, Inc.,* 1999 UT 109, ¶ 18, 992 P.2d 969, "[i]t is impossible to analyze how the jury came to award $1000 in general damages." *Id.* ¶ 18. It is equally impossible to know why the jury reduced Harris's claimed economic damages by two-thirds. However, given the nature and volume of the evidence concerning Harris's pre-existing conditions, the lack of evidence indicating that those conditions were symptomatic at the time of the accident, and the level of the damage awards, we conclude that, had the jury not been erroneously permitted to reduce Harris's damages due to asymptomatic pre-existing conditions, that is, "had the [improper] instruction [not] been given, the jury might have awarded more" damages. *See id.* ShopKo understandably does not argue otherwise.

¶ 26 "Our decision to reverse and remand for retrial renders the remaining issues on appeal moot." *State v. Sellers,* 2011 UT App 38, ¶ 23, 248 P.3d 70. We recognize that if an appellate court grants a new trial, it "may pass upon and determine all questions of law involved in the case presented upon the appeal and necessary to the final determination of the case." Utah R.App. P. 30(a); *see also Bair v. Axiom Design LLC,* 2001 UT 20, ¶ 20, 20 P.3d 388 ("[W]here an appellate court finds that it is necessary to remand a case for further proceedings, it has the duty of pass[ing] on matters which may then become material" (second alteration in original) (citation and internal quotation marks omitted)). Here, however, even if the case is retried, the remaining issues thoroughly briefed on appeal are either unlikely to recur on retrial or unlikely to recur in a factual context sufficiently similar to the instant one as to make addressing them now, on balance, "helpful to the parties and the court as the case proceeds." *See Sellers,* 2011 UT App 38, ¶ 23, 248 P.3d 70.

## CONCLUSION

¶ 27 At trial, much testimony and many exhibits were devoted to Harris's pre-exist-ing conditions. However, no witness testified, and no exhibit indicated, that those conditions were symptomatic on the date of the ShopKo incident. ShopKo identifies no such evidence, and our own examination of the record has disclosed none. We therefore conclude that under controlling law the evidence offered no basis to instruct the jury on apportioning Harris's damages between those attributable to the accident and those attributable to pre-existing conditions. The trial court's instruction on this point was, consequently, erroneous. We further conclude that the error was prejudicial. We therefore reverse the ruling of the trial court and remand for further proceedings consistent with this decision.

¶ 28 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and MICHELE M. CHRISTIANSEN, Judge.