[No. 25609. Department One. January 20, 1936.]

FRED WAPPLER, *Respondent,* v. PACIFIC DOOR & MANU-
FACTURING COMPANY, *Defendant,* FRED O. LARSON
*et al., Appellants.*[1]

*Roberts & Skeel* and *W. R. McKelvy,* for appellants.
*George Olson,* for respondent.

GERAGHTY, J.—In an action tried to the court with-
out a jury, the plaintiff recovered a judgment against
the defendants Larson for personal injuries sustained
by him when he was struck by an automobile driven
by the defendant husband. The accident occurred
about five o'clock in the afternoon of July 23, 1934, at
the intersection of Stevens street and Airport way, in
the city of Seattle, while the plaintiff was walking
across the intersection. The Pacific Door & Manu-
facturing Company, named as defendant in the com-
plaint, was dismissed before trial of the action. The
defendants Larson appeal and will be referred to in
the singular, as if the husband were sole appellant.

[1]Reported in 53 P. (2d) 738.

That part of Airport way with which we are here concerned runs north and south. Stevens street enters Airport way from the east and ends there. Airport way, as platted, is one hundred feet in width. The roadway is fifty-eight feet between curbs. Outside the curbs, on either side, strips twenty-one feet in width are left for sidewalks. The street is not paved the full width; there are two twenty-foot paved strips, one on the west side, the other on the east side. The unpaved eighteen-foot strip in the center is occupied by double street car tracks. This unpaved strip, however, is planked at the intersection for the full width of Stevens street and to a distance of about fifty feet north of the intersection.

The Apex Brewery, where respondent was employed, is at the northeast corner of the intersection. On the afternoon of the accident, respondent left the brewery, intending to take the street car on the west side of Airport way at the next intersection south of Stevens street. He testified that, on reaching the curb and before stepping into the street, he looked to the south to see that no cars were approaching from that direction. Seeing none, he walked across the paved strip onto the planking. While on the planking, a truck, returning to the brewery from the north on the west side of the street, turned into Stevens street. Respondent saluted the driver as he passed and, when within six feet of the east edge of the west paved strip, looked to his right—to the north—and saw a car approaching some three hundred feet or more away. Assuming that he could pass the remainder of the pavement in safety, he walked west without again looking to his right, and, as his foot was on the west curb, he was struck by appellant's car.

At the time of the impact, the right-hand wheels

of the car were over the curb and on the sidewalk space. He was hit by the left wheels or fender and knocked down, and had one of his feet crushed. The car came to rest some thirty feet to the south, with the right wheels still over the curb.

The respondent, while he could not estimate the speed of the car when he first saw it, thought, judging by the force with which he was struck and the distance the car ran before coming to rest, that it was going at a speed as high as sixty miles an hour. Two witnesses for the respondent, employed in the brewery, testified that their attention was attracted by the screeching of brakes, and that, looking through the windows, they saw the accident. They estimated the car was moving at from fifty to sixty miles an hour.

The appellant testified that, when three hundred feet away, he saw respondent on the planked portion of the street; that he continued to watch him as he drove south, at a rate of twenty-five miles an hour. In proceeding south, he accelerated his speed to about thirty miles in passing a truck, but had reduced his speed to five or six miles an hour by the time respondent was struck. He stated that, as the brewery truck turned into Stevens street, the respondent spoke to the driver, then moved sideways toward the west, continuing to look at the truck. After reducing his speed on approaching the intersection, assuming that respondent would let him pass, he accelerated the speed of his car. A witness, who was standing on the sidewalk south of the intersection, waiting for a Tacoma bus, corroborated appellant's testimony.

On this conflicting testimony, the trial court found the appellant guilty of negligence, in that he drove his car at the excessive, unlawful, and dangerous rate of speed of fifty miles an hour, and failed to yield the right of way to the respondent, and failed and

neglected to drive his car across the intersection in a careful and prudent manner, taking into consideration the character of traffic at the time, all in violation of the traffic ordinance of the city of Seattle. This finding is supported by the respondent's evidence, if believed by the court.

The trial court, in its findings, also exculpated the respondent from any charge of contributory negligence, finding that, while crossing the street, he proceeded to the center and looked to the north, or right, and observed the appellant's car approximately three hundred feet away, and far enough to give the respondent ample time to cross, if the appellant had driven at the lawful rate of speed; that, after looking, the respondent proceeded to cross to the curb and had reached it when struck and knocked down by the appellant's car.

While not conceding that he was himself guilty of negligence, the appellant's principal contention is that the respondent was guilty of such contributory negligence as should bar his right to recover. This contention is based chiefly upon respondent's own testimony that, while yet on the planked portion of the roadway, he looked to the north, his right, and saw the appellant's car approaching from that direction at a distance of three hundred feet or more, and that he then walked across the twenty-foot paved strip without again looking to his right. The appellant cites cases holding that, where a pedestrian heedlessly steps from the sidewalk into the street without taking any precaution to observe approaching traffic, he is guilty of contributory negligence, and argues that respondent, having looked only when on the planked portion of the street and then proceeding across to the west side, failed in due care for his own safety.

But the respondent did look for traffic, first to the

south when he left the sidewalk on the east side of the roadway. After passing the center of the street, he looked again to his right and saw a car approaching, but far enough distant to permit him to cross in safety if the appellant had proceeded at the legal rate of speed.

The appellant assumes there were two streets, one on the east and one on the west, but the fact that the sides of the roadway were of cement and the center planked with wood did not make the center less a part of the street. As we have seen, the whole of the center strip was planked at the intersection and for some distance to the north—it was all a street.

This is not a case where the respondent stepped heedlessly into the street in front of moving traffic. The trial court was fully warranted by the evidence in finding the respondent free of negligence. The respondent was crossing the intersection at a place appointed by the city ordinance. He had the right of way and had the right to assume under the circumstances that the appellant would drive at the rate of speed required by the ordinance. In the language of *Johnson v. Johnson,* 85 Wash. 18, 147 Pac. 649:

"While it is also true that there was nothing to prevent the respondent's glancing in the direction of the automobile and governing her progress by its actual rather than its presumed movements, it is also true that there was nothing to prevent the driver from glancing in the direction of the crossing and seeing that the respondent was taking a straight course thereon unconscious of the dangerously rapid approach of the automobile, and governing his movements accordingly. . . .

"The inquiry is thus narrowed to this: was the respondent, as a matter of law, guilty of contributory negligence in not continuously observing the automobile, which she saw a block distant when she

entered upon the crossing, in order to avoid being run down by it? . . .

"If the burden is placed upon the pedestrian, who when starting across a well-lighted street at a crossing sees an automobile a full city block distant, to thereafter continuously look up and down the street to avoid being run over on pain of being charged, *as a matter of law,* with contributory negligence, then the concession that, *as a matter of law,* the pedestrian has the right of way at such crossings is an empty fiction. No greater care than this constant observation could be required at any other place on the street. The term 'right of way' must have some bearing upon the relative rights, hence on the relative care required of the parties. If a pedestrian must exercise the same care of continuous observation at the crossings as in the middle of the block, in order to avoid the charge of contributory negligence when run down by a speeding automobile without sounding a warning, then he has no right of way, but enters upon any part of the street at his own peril. If the conceded right of way means anything at all, it puts the necessity of continuous observation and avoidance of injury upon the driver of the automobile when approaching a crossing, just as the necessity of the case puts the same higher degree of care upon the pedestrian at other places than at crossings."

The ordinance, while giving the pedestrian the right of way at street intersections, gives the automobile the right of way between intersections. The appellant is seeking here to impose upon the respondent, as a matter of law, the standard of care required of him if he had imprudently crossed the street between intersections, where vehicles have the superior right.

Finding no error in the record, the judgment will be affirmed.

MITCHELL, STEINERT, TOLMAN, and HOLCOMB, JJ., concur.