Robert E. ANDERSON, Plaintiff
and Appellant,

v.

Dionne BRADLEY, Defendant
and Respondent.

No. 15571.

Supreme Court of Utah.

Jan. 22, 1979.

Bryce E. Roe and Judith A. Boulden, of
Roe & Fowler, Salt Lake City, for plaintiff
and appellant.

D. Gary Christian and James R. Blakesley, of Kipp & Christian, Salt Lake City, for defendant and respondent.

HALL, Justice:

Plaintiff appeals a judgment of no cause of action in his suit for personal injuries sustained in an auto-pedestrian accident. The judgment was entered by the court after a jury verdict apportioned negligence equally between plaintiff and defendant (50%–50%).

There is substantial conflict in the evidence, but it appears from the record that the jury believed the facts to be as follows: At approximately 6:30 p. m. on February 7, 1976, plaintiff was walking north in a crosswalk on Sunnyside Avenue (a four lane street in Salt Lake City) at its intersection with Guardsman Way. Before entering the crosswalk he had apparently looked to his left and had waited for two cars to pass. He then glanced to his right where he noticed a car approaching but believed it to be far enough away and moving slowly enough that he could safely cross the street. The approaching car was driven by defendant who was traveling at approximately 35 miles per hour. There is some question as to whether or not the lights of defendant's vehicle were on and whether such illumination was even necessary at the given hour (dusk). In any event defendant apparently did not see plaintiff until he was in the center of the most northerly lane of Sunnyside Avenue (defendant's lane of traffic), when only about 50 feet separated them. One of the witnesses at trial, one Ward, testified that he was driving another vehicle behind defendant's automobile. Ward first observed plaintiff through the windows of defendant's car, at which time only four or five car lengths separated plaintiff and defendant. Plaintiff was walking at a medium to fast gait and didn't seem to be aware that a car was bearing down on him. Ward could see that a collision was about to ensue unless either plaintiff or defendant acted immediately to avoid the accident. In an apparent attempt to avoid striking plaintiff, the defendant caused her car to swerve to the left. The investigating officer, one Banks, testified that shortly after the accident plaintiff had told him that he had seen the vehicle approaching and decided to "sprint" across the street. The right front portion of defendant's car collided with plaintiff, the impact throwing him several feet to the curb. Plaintiff suffered several broken bones and was hospitalized for some two months. Plaintiff sued defendant in negligence for injuries sustained as a result of the accident.

At trial, the jury heard the testimony and then was given instructions, to which no exceptions were taken. Among the instructions given were the following:

A driver of a motor vehicle has a duty not to drive the vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, and having regard to the actual and potential hazards then existing, and speed is to be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway, in compliance with legal requirements and the duty of all persons to use due care. The statutes also require that the driver of a vehicle shall, consistent with the foregoing, drive at an appropriate reduced speed when approaching and crossing an intersection, or when special hazards exist with respect to pedestrians or other traffic, or by reason of weather or highway conditions.

A driver of a motor vehicle is required to yield the right-of-way, slowing down or stopping if necessary to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.

The person having the right-of-way may assume that the other will yield. Failure of defendant to so yield the right-of-way to plaintiff would constitute negligence on defendant's part, if you so find.

It is the duty of every operator of a motor vehicle to exercise ordinary care and keep a careful lookout ahead and about him. The exercise of ordinary care requires him to make observations at a point or points where his observations will be efficient for protection from injury to persons or property, requires a seasonable and effective use of a driver's sense of sight to observe timely, not only the presence, location and movement of other uses of the highway, pedestrians as well as vehicles, but traffic signs and signals, obstructions to vision, and everything else which might warn him of possible danger.

Before attempting to cross a street that is being used for the traffic of motor vehicles, it is a pedestrian's duty to make reasonable observations to learn the traffic conditions confronting him; to look to that vicinity from which, were a vehicle approaching, it would immediately endanger his passing; and to make the determination which a reasonably prudent person would make under the same circumstances as to whether it is reasonably safe to attempt the crossing. What observations he should make, and what he should do for his own safety, while crossing the street are matters which the law does not attempt to regulate in detail and for all occasions, except in this respect: it places upon him the continuing duty to exercise the care a reasonably prudent person would observe to avoid an accident.

In determining whether the plaintiff was negligent with respect to his own safety, you may take into account the fact that a pedestrian crossing a busy street must be constantly vigilant for his safety with respect to all of the conditions around him, and that even if a car is seen approaching, unless it is so positioned as to constitute an immediate hazard to him, he is not necessarily obliged to focus full and undivided attention on that particular car and so calculate his entire conduct as to avoid being struck by it. He need not anticipate that the driver will speed, fail to observe, fail to control her car, fail to afford him the right of way, or otherwise be negligent unless, in the exercise of ordinary care, he observes or should have observed something to warn him of such improper conduct.

We opine that the instructions given were essentially correct and that they fairly stated the law as to the parties' respective duties. Based upon the evidence and the above instructions the jury found that plaintiff and defendant were equally negligent, which under Utah's comparative negligence statute[1] warrants the entry of a judgment of no cause of action. From such verdict, defendant moved for a new trial,[2] claiming (1) that the evidence was insufficient to justify the verdict and that the verdict was wrong as a matter of law, (2) that surprise testimony had been elicited at trial, and (3) that defense counsel had made improper, prejudicial comments to the jury. Although not specifically designated as points on appeal, but since they were argued here, we will briefly treat (2) and (3).

As to (2), the claim is basically that Officer Bank's testimony is contrary to the evidence and inconsistent with his prior statement. Banks had earlier stated:

After I had investigated the scene of the accident I went to the hospital and spoke with Robert Anderson. He was in severe pain but did indicate to me that he saw the car but could not get out of the way before it struck him. He was wearing light clothing, i. e., brown cords and a light colored jacket.

This statement is not necessarily inconsistent with the officer's testimony that plaintiff had "sprinted" across the road, and it is the jury's prerogative to weigh it with all other evidence admitted. We are not convinced that surprise is present here. In any event, surprise as a ground for a new trial is only that which ordinary prudence could not have guarded against.[3] The "surprise"

---

**1.** U.C.A., 1953, 78–27–37 et seq.

**2.** Under Rule 59, U.R.C.P.

**3.** Rule 59(a)(3), U.R.C.P.

claimed here may not be so categorized since it could have been easily guarded against by utilization of available discovery procedures.[4]

■ As to (3), defense counsel stated in his closing arguments to the jury that defendant should not be shackled with all of the responsibility for the accident, insofar as the issue of negligence is concerned. Plaintiff's concern for the prejudicial effect the word "shackled" may have had on the jury is ill-founded, as when taken in context the comments were not improper.

■ The motion for a new trial was denied and plaintiff appeals, asserting (1) above as his only specific point on appeal but combining with it a claim that the trial court abused its discretion in refusing to grant a new trial. The law in Utah is clear that if reasonable minds could have found as the jury did from the evidence before it, then this Court cannot say that the trial court abused its discretion in denying a party's motion for a new trial on the ground of insufficiency of the evidence to support the verdict.[5] From the record it appears that the jury reasonably concluded that plaintiff and defendant were equally negligent, and it is the jury's prerogative to decide questions of driver's and pedestrian's negligence.[6]

■ The claim that the trial court should have ruled as a matter of law in favor of plaintiff likewise fails. If Utah is to adopt a "pure" comparative negligence statute as is intimated, the legislature, not the judiciary, must take the initiative.[7] Furthermore, no matter who has the right-of-way, both driver and pedestrian have a duty to maintain reasonable, proper and adequate lookout and to recurrently reobserve and reappraise the situation.[8] Failure to do so

is negligence, and it lies within the prerogative of the fact-finder to determine the percentage thereof.

Plaintiff places undue reliance on several Wisconsin Supreme Court cases. The standard of review in that state has no application in this jurisdiction unless our procedure is legislatively or judicially altered. Furthermore, the cases relied upon are affirmances of the granting of a new trial by lower courts. To reverse a lower court's ruling as sought in the instant case requires a showing of an abuse of discretion, not present here.

Affirmed. Costs to defendant.

ELLETT, C. J., and CROCKETT and WILKINS, JJ., concur.

MAUGHAN, Justice (dissenting).

For the following reasons I dissent.

In my view the instructions cited in the main opinion did not quite make the mark. The mark being, the higher degree of care required of the driver of a motor vehicle, above that required of a pedestrian when in a pedestrian lane. I would reverse and remand for a new trial.

While the cited instructions reflect the statutory law as written, they do not achieve what I think the law to be. They appear to me to place the pedestrian and the driver of the automobile on equal footing. My view is expressed as follows:

If the conceded right of way means anything at all, it puts the necessity of continuous observation and avoidance of injury upon the driver of the automobile when approaching a crossing, just as the necessity of the case puts the same higher

---

4. Rule 26 et seq., U.R.C.P.

5. *Moser v. Zion's Co-Op. Merc. Inst.*, 114 Utah 58, 197 P.2d 136 (1948); see also *Pollesche v. Transamerican Ins. Co.*, 27 Utah 2d 430, 497 P.2d 236 (1972).

6. *Coombs v. Perry*, 2 Utah 2d 381, 275 P.2d 680 (1954).

7. Such a statute would permit a plaintiff to recover for damage caused by the defendant's negligence regardless of the plaintiff's own negligence, e. g., in the instant case, defendant would be liable for 50% of the damages suffered by plaintiff.

8. *Mackey v. Harvey*, Utah, 572 P.2d 382 (1977).

degree of care upon the pedestrian at other places than at crossings.[1]

The same thought is recorded in *Virginia Electric Power Co. v. Blunt's Adm'r*,[2] where the court said:

> The pedestrian under such regulations for his own protection, is required to exercise a higher degree of vigilance when he crosses a street between intersections. This is because the vehicle has the superior right there. On the other hand, the operator of a vehicle must exercise a greater degree of vigilance at an intersection because the pedestrian has the superior right there.

The rationale underpinning pedestrian right of way cases is consonant with that in other situations where it is the duty of a nonfavored party to avoid interference or collision with the other. The rationale has been succinctly stated by this Court through Mr. Justice Crockett in *Coombs v. Perry*[3] as follows:

> . . . The right of way rule simply means this, that if two persons are so proceeding that if they continue their course[s] there would be danger of collision, the disfavored one must give way and the favored one may proceed . . .

That no exceptions were taken to the instructions given is of little consequence to me. This is an area of the law which is fraught with increasing danger each time a new person enters the society, and each time another vehicle is added to motorized traffic. Society would be best served by requiring proper identification of the favored and disfavored participants in occurrences such as the one at hand.

That an appellate court, in the interest of justice, may review the giving or failure to give needed instructions, see *State v. Bell*, Utah, 563 P.2d 186.

1. *Wappler v. Pacific Door and Mfg. Co.*, 185 Wash. 241, 53 P.2d 738 (1936).

2. 158 Va. 421, 163 S.E. 329, 333 (1932).

3. 2 Utah 2d 381, 275 P.2d 680 (1954); see also Fisher, Right of Way in Traffic Law Enforcement Thomas Law Book Co., 1956.