*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2013 UT 34**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

WENDY HARRIS,
*Respondent,*

*v.*

SHOPKO STORES, INC.,
*Petitioner.*

No. 20110945
Filed June 14, 2013

On Certiorari from the Utah Court of Appeals

Fourth District, American Fork Dep't
The Honorable Christine Johnson
No. 070101906

Attorneys:

Michael E. Day, Nathan Whittaker, Murray, for respondent

Alain C. Balmanno, Ruth A. Shapiro, Salt Lake City, for petitioner

Brent Gordon, Idaho Falls, John P. Lowrance, South Jordan,
amicus curiae

CHIEF JUSTICE DURRANT, authored the opinion of the Court,
in which ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1 Wendy Harris was injured when she sat on a display office chair at ShopKo Stores, Inc. (ShopKo), and the chair collapsed. She sued ShopKo for negligence. At the trial, evidence was introduced that she suffered from preexisting conditions that may have contributed to her injury. The trial court instructed the jury that, if it could, it should apportion damages between those attributable to ShopKo's negligence and those attributable to her preexisting conditions. The jury found ShopKo negligent but

awarded Ms. Harris substantially less than she requested in damages. She appealed.

¶2    The court of appeals reversed the jury's award and remanded for a new trial. It did so on the ground that the trial court had erred in giving the apportionment jury instruction. The court of appeals held that, because Ms. Harris's preexisting conditions were asymptomatic on the date of the accident, ShopKo was not entitled to a jury instruction permitting the jury to allocate some portion of the damages to Ms. Harris's preexisting conditions. We conclude that this approach is inconsistent with a core principle of tort law: defendants are liable only for those injuries proximately caused by their negligence. Under the court of appeals' approach, where a plaintiff is experiencing no symptoms on the date of an accident, a defendant is liable for the full extent of the plaintiff's injury, even though some portion of that injury may, in fact, have been caused by a preexisting condition. While we conclude the court of appeals erred in this regard, however, we nevertheless affirm that court's grant of a new trial. We do so because at trial ShopKo did not present evidence sufficient for the jury to apportion damages on a nonarbitrary basis.

## BACKGROUND

¶3    On March 29, 2006, Ms. Harris went to ShopKo to buy an office chair. When she sat in one of the display chairs, the chair fell apart. Ms. Harris fell to the floor, landing on her wrist and tailbone. The next day, she went to the hospital after feeling "deep abdominal pain." She worried that "something had come loose" from a previous surgery. The pain in Ms. Harris's wrist eventually went away, but the abdominal pain intensified in her lower back and tailbone.

¶4    In the days after the ShopKo accident, Ms. Harris visited her brother, Kay Whittaker, who is a family nurse-practitioner. She later saw several doctors and therapists. These physicians observed that she suffered severe pain in her lower back and tailbone, which radiated down the back of her leg to her knee. Ms. Harris underwent a variety of treatments, including pain medication, physical therapy, massage therapy, and chiropractic care.

¶5    Despite the treatment she received, Ms. Harris continued to experience pain three years after the ShopKo accident. In 2009, she visited Dr. Richard Rosenthal, a pain-management specialist. Dr. Rosenthal diagnosed her with facet joint syndrome

(inflammation of one of the spinal joints) and coccydinia (inflammation of the tailbone). Dr. Rosenthal treated Ms. Harris's facet joint syndrome through radio frequency lesioning—a treatment that stops pain by severing the nerve to the facet joint. To treat the coccydinia, Ms. Harris had to sit on a donut cushion and receive occasional injections of steroids and anesthetics to reduce inflammation.

¶6    In 2007, Ms. Harris sued ShopKo for negligence. The case went to a jury trial in 2009. At trial, Dr. Rosenthal testified as an expert in interventional pain medicine. He stated that facet joint syndrome is not always trauma related and can be caused by degenerative disc disorder due to aging. He testified that it is more likely than not that the ShopKo accident caused Ms. Harris's pain and injury. He also testified that Ms. Harris received a single treatment for possible back pain in 2002, although her chief complaint at the time was leg pain.

¶7    Dr. Rosenthal further testified that Ms. Harris had been in three automobile accidents prior to the ShopKo accident. As a result, she had received treatment for neck and back pain, although "there was no subsequent treatment for back pain in any of those accidents." Dr. Rosenthal mentioned that he saw two references to fibromyalgia, which he described as a "chronic condition," in Ms. Harris's records from 2001 but did not believe fibromyalgia caused her pain after the ShopKo accident. He stated that he believed Ms. Harris's pain would eventually go away but that she may face permanent complications from her injuries. Finally, he testified that Ms. Harris's medical treatment was reasonable.

¶8    Following Dr. Rosenthal's testimony, Ms. Harris called, among others, Dr. Eric Hogenson, Mr. Kay Whittaker, and Dr. Rodney Scuderi to testify. Each witness testified that he treated Ms. Harris after the ShopKo accident. First, Dr. Hogenson, Ms. Harris's family-practice physician, testified that he treated Ms. Harris for back pain. He testified that her back pain began after the ShopKo incident. He also testified that Ms. Harris's records indicate that he treated her for fibromyalgia and depression in 1997. Second, Mr. Whittaker, a family nurse-practitioner, also treated Ms. Harris for back pain shortly after the ShopKo incident. He testified that he ordered x-rays and that the x-rays did not show any fractures. Finally, Dr. Scuderi, Ms. Harris's chiropractor, testified that he treated Ms. Harris shortly after the ShopKo incident. He testified that, in his opinion, her fall at ShopKo caused her lower-back injury. He also testified

that his treatment of her was reasonable, although it did not provide lasting relief.

¶9 On cross-examination, ShopKo presented Dr. Scuderi with records of Ms. Harris's past medical treatment. These records included a 1998 hospital visit for "cervical strain and to rule out a disc herniation"; a 2001 hospital visit following a car accident for "diffuse neck pain"; and a 2002 hospital visit for "excruciating discomfort in the lumbar area," which led to a diagnosis of "left leg pain and questionable sciatica." Dr. Scuderi then explained that Ms. Harris's symptoms after the ShopKo incident were not consistent with a chronic condition. He noted that "[i]t's not unusual for a patient of Ms. Harris's age to have some neck and back pain." On redirect, Dr. Scuderi testified that nothing in Ms. Harris's past medical records indicated that she had a chronic lower-back condition prior to visiting him.

¶10 Dr. Alan Colledge testified for ShopKo. He practices family medicine and treated Ms. Harris a total of five times after the ShopKo accident. He testified that he could not conclude that the ShopKo incident was the cause of Ms. Harris's pain, stating that he "just report[s] the news" and "do[esn't] know where [the pain] comes from." He testified that the results of Ms. Harris's MRI and x-rays were "normal" and that her sacroiliac joint looked "fairly normal." He then testified that a sign of degenerative disc disease is an annular tear. Dr. Colledge believed that Ms. Harris had "an annular tear or . . . traumatized the disc complex" in her back and that "she had some trauma." He also testified that Ms. Harris's questionable sciatica in 2002 could potentially play a role in her current pain. Ms. Harris's counsel pointed out on cross-examination that the radiologists disagreed as to whether Ms. Harris had an annular tear.

¶11 Dr. Colledge further testified that Ms. Harris had back pain consistent with degenerative disc disease. He acknowledged that facet disease can be caused by a single incident of trauma and that it can also be "brought to light" by trauma. But he believed that Ms. Harris "probably ha[d] a component of" both degenerative disc disease and facet disease or an aggravation of both. Moreover, Dr. Colledge testified that degenerative disc disease can be asymptomatic and that a traumatic incident can cause it "to go from more of an asymptomatic to symptomatic state." Finally, he testified that Ms. Harris's pain is still "extraordinary" and "more than what [he] would usually see" for an annular tear or facet disease after nine months. He thought

Ms. Harris's use of narcotics and her involvement in the present lawsuit could be delaying her recovery.

¶12 At the close of trial, the district court instructed the jury concerning "[a]ggravation of symptomatic preexisting conditions" (Apportionment Instruction). The Apportionment Instruction read as follows:

> If Plaintiff had a physical, emotional, or mental condition before the time of the March 29, 2006 incident, she is not entitled to recover damages for that condition or disability. However, Plaintiff is entitled to recover damages for any aggravation of the pre-existing condition that was caused by Defendant's fault, even if Plaintiff's pre-existing condition made her more vulnerable to physical or emotional harm than the average person. This is true even if another person may not have suffered any harm from the event at all.

> When a pre-existing condition makes the damages from injuries greater than they would have been without the condition, it is your duty to try to determine what portion of the physical, emotional or mental harm to Plaintiff was caused by the pre-existing condition and what portion was caused by the March 29, 2006 fall.

> If you are not able to make such an apportionment, then you must conclude that the entire physical, emotional and mental harm to Plaintiff was caused by Defendant's fault.

¶13 Ms. Harris objected to the Apportionment Instruction because it "talks about an aggravation of symptomatic preexisting conditions, and . . . the evidence in this case does not support that finding." Ms. Harris also objected that there was no expert testimony to guide the jury on how to apportion damages. The court overruled her objections because "Dr. Colledge testified that [the ShopKo accident] may have aggravated a degenerative disc disorder[,] [s]o there is evidence of a preexisting condition."

¶14 Ms. Harris requested $72,777.34 for past and future medical expenses.[1] Although the jury found ShopKo negligent, it awarded her only $25,000 for those expenses, plus $1,000 in noneconomic damages.[2] Ms. Harris filed a motion for a new trial, or, in the alternative, additur of damages. The trial court denied her motion. Ms. Harris appealed.

¶15 The court of appeals reversed and remanded for a new trial. Relying on *Biswell v. Duncan*,[3] it held that the trial court erred in giving the Apportionment Instruction because there was no evidence that Ms. Harris's preexisting conditions were symptomatic at the time she fell at ShopKo.[4] The court also found that the Apportionment Instruction prejudiced Ms. Harris because "had the [improper] instruction [not] been given, the jury might have awarded more damages."[5] We granted ShopKo's petition for certiorari and have jurisdiction pursuant to section 78A-3-102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶16 "On certiorari we review the decision of the court of appeals, not the decision of the trial court. In doing so, we review for correctness, giving the court of appeals' conclusions of law no deference."[6]

## ANALYSIS

¶17 The court of appeals reversed the jury's award and remanded for a new trial on the ground that the trial court erred in giving the Apportionment Instruction. On certiorari, ShopKo argues that the court of appeals applied the wrong legal standard when it concluded that preexisting conditions must be symptomatic on the day of the accident in order to justify

---

[1] *Harris v. ShopKo Stores, Inc.*, 2011 UT App 329, ¶ 11, 263 P.3d 1184.

[2] *Id.*

[3] 742 P.2d 80 (Utah Ct. App. 1987).

[4] *Harris*, 2011 UT App 329, ¶¶ 14, 24.

[5] *Id.* ¶ 25 (alterations in original) (internal quotation marks omitted).

[6] *Grand Cnty. v. Rogers*, 2002 UT 25, ¶ 6, 44 P.3d 734 (internal quotation marks omitted).

apportioning damages. ShopKo also argues that the court of appeals erred in holding that there was insufficient evidence to support giving the Apportionment Instruction.

¶18 We decline to adopt the legal standard applied by the court of appeals because it requires a bright-line approach that is inconsistent with the principle of proximate cause, which should be the overarching and guiding principle in the analysis. But we nevertheless agree that the Apportionment Instruction was improper because the evidence at trial failed to provide a nonarbitrary basis for the jury to apportion damages. We therefore affirm the court of appeals' decision to order a new trial in this case.

## I. WE DECLINE TO ADOPT THE COURT OF APPEALS' APPROACH OF REQUIRING PREEXISTING CONDITIONS TO BE SYMPTOMATIC ON THE DAY OF THE ACCIDENT IN ORDER FOR AN APPORTIONMENT INSTRUCTION TO BE PROPER

¶19 In deciding whether the Apportionment Instruction was properly given, the court of appeals determined that the "crucial question" in the analysis is whether the preexisting condition was symptomatic on the date of the injury.[7] Under the court's approach, a preexisting condition provides a basis for apportionment if, but only if, it is symptomatic on the date of the tortious conduct.[8] Thus, in the eyes of the court, "a victim with latent, dormant, or otherwise asymptomatic pre-existing conditions stands on equal footing with a victim with no pre-existing conditions."[9] In other words, under the court's analysis, a preexisting condition that is asymptomatic on the date of the accident cannot justify any reduction in damages.

¶20 In assigning determinative effect to whether a preexisting condition is symptomatic or asymptomatic on the injury date, the court of appeals relied on its decision in *Biswell v. Duncan*.[10] *Biswell* involved a plaintiff who had a preexisting condition that

---

[7] *Harris v. ShopKo Stores, Inc.*, 2011 UT App 329, ¶ 23, 263 P.3d 1184.

[8] *Id.* ¶¶ 23, 27.

[9] *Id.* ¶ 17.

[10] *Id.* ¶¶ 17, 22–24.

she claimed had been "resolved" and therefore did not cause pain prior to the accident.[11] The court stated that "when a defendant's negligence aggravates . . . a latent, dormant, or asymptomatic condition, . . . the defendant is liable . . . for the full amount of damages which ensue."[12] The court elaborated:

> [W]hen a latent condition itself does not cause pain, but that condition plus an injury brings on pain by aggravating the pre-existing condition, then the injury, not the dormant condition, is the proximate cause of the pain and disability. A plaintiff, therefore, is entitled to recover all damages which actually and necessarily follow the injury.[13]

¶21   The court of appeals quoted this language from *Biswell* in the instant case to support its conclusion that when a condition is asymptomatic on the date of the accident, the negligence will be deemed the proximate cause of the entire injury, and the preexisting condition will be disregarded.[14] Thus, by determining that Ms. Harris's conditions were asymptomatic on the date of the accident and that the Apportionment Instruction was improper, the court assumed that Ms. Harris's preexisting conditions could not have caused any portion of her pain and injury.

¶22   That the court of appeals would adopt this approach is certainly understandable given that other jurisdictions have followed a similar approach,[15] but we decline to adopt it. We conclude that our case law—which recognizes the central role proximate cause must play in tort law—is inconsistent with such a narrow, bright-line approach.

---

[11] 742 P.2d 80, 88 (Utah Ct. App. 1987).

[12] *Id.*

[13] *Id.*

[14] *Harris*, 2011 UT App 329, ¶ 23.

[15] *See, e.g.*, *Sleeth v. Louvar*, 659 N.W.2d 210, 213–16 (Iowa 2003) (finding error in instructing the jury on aggravation where there was no evidence that plaintiff's preexisting arthritis was symptomatic prior to the accident at issue). *But see id.* at 217 (Carter, J., dissenting) (arguing that, given the evidence in the case, the jury should have been able to decide whether some or all of plaintiff's pain would have occurred even absent the accident).

¶23 In *Brunson v. Strong*, we recognized that "one who injures another takes him as he is."[16] Thus, a plaintiff is entitled to recover for all harm that is proximately caused by the defendant's negligence, "even if a given plaintiff is more vulnerable to injury than others."[17] But this principle, commonly known as the eggshell plaintiff doctrine, in no way bars consideration of other relevant potential sources of a plaintiff's pain in determining the extent of damage proximately caused by the defendant.

¶24 Indeed, we further recognized in *Brunson* that although an injured party is taken "as he is, nevertheless the plaintiff may not recover damages for any pre-existing condition or disability she may have had *which did not result from any fault of the defendant*."[18] And while "she is entitled to recover damages for any injury she suffered, including any aggravation . . . of such a pre-existing condition," she may only do so to the extent that the aggravation "*was proximately caused by the defendant's negligence.*"[19] Moreover, in *Tingey v. Christensen*, we stated that "if the jury can find a reasonable basis for apportioning damages between a preexisting condition and a subsequent tort, it should do so."[20]

¶25 These cases highlight the fundamental aim in deciding damages: "to restore the injured party to the position he would have been in had it not been for the wrong of the other party."[21] Proximate cause plays a central role in determining the precise extent of the defendant's liability and, in turn, what the plaintiff's position would have been absent the defendant's negligence.[22]

---

[16] *Brunson v. Strong*, 412 P.2d 451, 453 (Utah 1966).

[17] *Ryan v. Gold Cross Servs., Inc.*, 903 P.2d 423, 428 (Utah 1995).

[18] *Brunson*, 412 P.2d at 453 (emphasis added) (footnote omitted).

[19] *Id.* (emphasis added).

[20] 1999 UT 68, ¶ 15, 987 P.2d 588.

[21] *Park v. Moorman Mfg. Co.*, 241 P.2d 914, 920 (Utah 1952).

[22] *See Raab v. Utah Ry. Co.*, 2009 UT 61, ¶ 22, 221 P.3d 219 ("[T]he 'legal cause' inquiry focuses on the question of whether liability should attach to a particular cause in fact."); *id.* ¶ 35 ("[A]ssessment of legal responsibility for a cause in fact of an injury is the *raison d'etre* of the proximate cause requirement."); *Williams v. Barber*, 765 P.2d 887, 889 (Utah 1988) ("With respect to

(Continued)

¶26 The eggshell plaintiff doctrine does not alter this aim. It has never required tortfeasors to compensate plaintiffs for damages that the tortfeasors' negligence did not proximately cause.[23] In our view, however, the court of appeals' narrow, bright-line approach to the eggshell plaintiff doctrine is inconsistent with this aim of awarding damages. An asymptomatic preexisting condition may well be an independent contributor to a plaintiff's pain and injury, which was also proximately caused to some degree by a tortfeasor's negligence.[24] But the court of appeals' approach would prevent the jury from apportioning damages between the preexisting condition and the negligence simply because the preexisting condition was not symptomatic on the date of the accident. In our view, this result is potentially arbitrary and risks holding defendants liable for more than they proximately caused in damages. We accordingly conclude that whether a preexisting condition is symptomatic or asymptomatic on the date of the accident is not the determinative factor in granting an apportionment instruction.[25]

---

tort liability generally, a finding of proximate cause must be made by the trier of fact before an award for damages is granted.").

[23] *See, e.g.*, *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1192–93 (9th Cir. 2002) (discussing the eggshell plaintiff doctrine and recognizing that "[t]he defendant of course is liable only for the extent to which the defendant's conduct has resulted in an aggravation of the pre-existing condition, and not for the condition as it was" (internal quotation marks omitted)).

[24] *See, e.g.*, *Maurer v. United States*, 668 F.2d 98, 100 (2d Cir. 1981) (per curiam) (stating that "when a plaintiff has a preexisting condition that would inevitably worsen, a defendant causing subsequent injury is entitled to have the plaintiff's damages discounted to reflect the proportion of damages that would have been suffered even in the absence of the subsequent injury"); *see also Sauer v. Burlington N. R.R. Co.*, 106 F.3d 1490, 1495 (10th Cir. 1996) (citing cases that recognize this proposition).

[25] We also note that, to the extent that the court of appeals' approach requires evidence of symptoms on the precise date of the injury, it is inconsistent with our decision in *Tingey*, where we held that evidence of pain from a preexisting condition twenty-five days before an accident was sufficient to justify a jury's

(Continued)

¶27 While we reaffirm the jury's duty to apportion damages if the evidence supports doing so, we recognize that it is rarely easy to determine the causal contribution of a preexisting condition to a plaintiff's pain and injury. The "[o]bjective symptoms and the physical basis of . . . ailment[s] are often difficult to discover, analyze and demonstrate to others."[26] If the preexisting condition is asymptomatic at the time of the tortious conduct, the analysis will be even more difficult. But the "evaluation and the conclusion to be drawn [from the evidence] is peculiarly within the province of the jury."[27] Indeed, proximate cause—although often a thorny issue—is generally a question of fact for the jury to decide.[28]

¶28 We are also confident that our case law already provides sufficient protection for eggshell-type plaintiffs even without the court of appeals' bright-line approach. In *Tingey*, we recognized that "a tortfeasor should bear the burden of uncertainty in the amount of a tort victim's damages."[29] We accordingly held that while a jury should apportion if it can, "it should find that the tortfeasor is liable for the entire amount of damages" if it "finds it impossible to apportion."[30] Thus, the burden is on the defendant to demonstrate that apportionment is possible where there is any uncertainty.[31]

---

conclusion that the preexisting condition was the cause of harm suffered after the accident. 1999 UT 68, ¶ 18.

[26] *Brunson*, 412 P.2d at 453.

[27] *Id.*

[28] *Crestwood Cove Apartments Bus. Trust v. Turner*, 2007 UT 48, ¶ 31, 164 P.3d 1247; *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996). The two circumstances in which proximate cause may be decided as a matter of law are "(i) when the facts are so clear that reasonable persons could not disagree about the underlying facts or about the application of a legal standard to the facts, and (ii) when the proximate cause of an injury is left to speculation so that the claim fails as a matter of law." *Crestwood Cove*, 2007 UT 48, ¶ 32 (internal quotation marks omitted).

[29] 1999 UT 68, ¶ 14.

[30] *Id.* ¶ 15.

[31] *See Robinson v. All-Star Delivery, Inc.*, 1999 UT 109, ¶ 13 n.3, 992 P.2d 969 (discussing a tortfeasor's liability when the evidence at trial is uncertain as to apportionability of damages).

¶29 Finally, we emphasize that our decision today is not an invitation for tortfeasors to dredge up every physical injury or defect a victim has ever had in an attempt to reduce liability. Evidence of preexisting conditions must be relevant to the pain or injury at issue and must also overcome other pertinent evidentiary hurdles in order to be admissible.[32] If there is no evidence that a particular preexisting condition is relevant to the plaintiff's pain or injury, evidence of that condition should not be admitted.

¶30 Because a jury should apportion damages if the evidence indicates that the defendant's conduct was not the sole proximate cause of the plaintiff's injury, we decline to adopt the court of appeals' bright-line approach of focusing on whether the condition was asymptomatic or symptomatic on the date of the accident. We next consider whether there was sufficient evidence to support giving the Apportionment Instruction in this case.

## II. THE APPORTIONMENT INSTRUCTION WAS ERRONEOUS BECAUSE THE EVIDENCE AT TRIAL DID NOT PROVIDE THE JURY WITH A NONARBITRARY BASIS FOR APPORTIONING DAMAGES

¶31 The court of appeals concluded that there was insufficient evidence to support the Apportionment Instruction.[33] As discussed above, this conclusion was a product of the court's bright-line approach to symptomatic and asymptomatic preexisting conditions, which we have declined to adopt. We must now consider whether the evidence at trial supported the Apportionment Instruction. While we recognize that there was, as the trial court found, expert testimony that Ms. Harris had a preexisting condition, we conclude that this testimony alone was insufficient to support the Apportionment Instruction because it did not address the extent to which Ms. Harris's condition may have contributed to her injury and pain.[34]

---

[32] *See, e.g.*, UTAH R. EVID. 401, 402, 403.

[33] *Harris v. ShopKo Stores, Inc.*, 2011 UT App 329, ¶ 24, 263 P.3d 1184.

[34] Ms. Harris also argues that we can affirm the court of appeals' decision on the alternative ground that the trial court improperly instructed the jury to reduce future damages to present value. We decline to reach this issue given our conclusion

(Continued)

¶32 "The jury is entrusted to resolve all relevant questions of fact presented to the court," including "apportionment."[35] Nevertheless, the jury must have a reasonable basis for apportioning damages,[36] and apportionment may not be based on "pure speculation."[37] A jury instruction on apportionment, therefore, requires that there be some nonarbitrary evidentiary basis for the jury to apportion damages.[38]

¶33 In other contexts, we have declined to require expert testimony on apportionment. In fact, we have held that such expert testimony should be precluded in certain circumstances. For example, in *Steffensen v. Smith's Management Corp.*, a comparative negligence case, we held that the trial court did not abuse its discretion by excluding expert testimony on apportioning fault because the testimony would not have been "helpful to the fact finder" and "the apportionment of

---

that there was insufficient evidence to support the Apportionment Instruction.

[35] *Little Am. Ref. Co. v. Leyba*, 641 P.2d 112, 114 (Utah 1982); *see also Anderson v. Bradley*, 590 P.2d 339, 342 (Utah 1979) ("[I]t is the jury's prerogative to decide questions of [comparative] negligence.").

[36] *See Egbert v. Nissan Motor Co.*, 2010 UT 8, ¶ 37, 228 P.3d 737 ("[F]or a jury to apportion relative fault between two parties, the jury, of necessity, must have *sufficient evidence* of the culpability of each party to make that apportionment." (internal quotation marks omitted)); *see also Osuala v. Olsen*, 609 P.2d 1325, 1326 (Utah 1980) ("There is substantial, credible evidence here, together with reasonable inference to be drawn therefrom, by which the Court, as factfinder, could apportion the negligence between the parties as it did."); *Lamkin v. Lynch*, 600 P.2d 530, 531–32 (Utah 1979) (refusing to disturb an apportioned jury award because "the jury could reasonably conclude" from the evidence that the apportionment was appropriate); *Anderson*, 590 P.2d at 342 ("From the record it appears that the jury reasonably concluded that plaintiff and defendant were equally negligent, and it is the jury's prerogative to decide questions of driver's and pedestrian's negligence.").

[37] *Egbert*, 2010 UT 8, ¶ 37.

[38] *Tingey v. Christensen*, 1999 UT 68, ¶ 15, 987 P.2d 588.

negligence . . . was exclusively the jury's responsibility."[39] But finding fault is normally an exercise in common sense of which jurors and experts are equally capable.[40] Thus, the nonarbitrary basis for apportioning damages in cases like *Steffensen* can be found in the jury's common experience.

¶34 This is often not true when allocating causation between preexisting pathologies and a subsequent accident. Where apportionment depends on the competing causal influences of a defendant's negligence and a preexisting medical condition, as it does in this case, common experience is a poor substitute for expert guidance.[41] This is because the average lay juror is ill-equipped to sift through complicated medical evidence and come to a nonspeculative apportionment decision.[42] In cases like this, expert testimony may be the jury's only guide as to whether apportionment is proper and, if so, to what extent.

¶35 In the instant case, we conclude that expert testimony allocating causation between Ms. Harris's preexisting conditions and her fall at ShopKo was necessary in order for an

---

[39] 862 P.2d 1342, 1347–48 (Utah 1993); *see also* UTAH R. EVID. 702(a) ("[A] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge *will help the trier of fact* to understand the evidence or to determine a fact in issue." (emphasis added)).

[40] *See Leyba*, 641 P.2d at 114 (stating that apportionment of fault is entrusted to juries).

[41] *See Martin v. Owens-Corning Fiberglas Corp.*, 528 A.2d 947, 950 (Pa. 1987) (plurality opinion) ("[C]ommon sense and common experience possessed by a jury do not serve as substitutes for expert guidance, and it follows that any apportionment by the jury in this case was a result of speculation and conjecture and hence, improper."); *Lee v. Pittsburgh Corning Corp.*, 616 A.2d 1045, 1048 (Pa. Super. Ct. 1992) (same).

[42] *Cf. Bowman v. Kalm*, 2008 UT 9, ¶ 7, 179 P.3d 754 (stating that the "general requirement in medical malpractice cases that the element of proximate cause be supported by expert testimony" is grounded in the idea that "the causal link between the negligence and the injury [is] usually not within the common knowledge of the lay juror").

apportionment instruction to be given. The evidence supports a reasonable inference that Ms. Harris had previously suffered injuries in car accidents and that she had a number of preexisting conditions at the time of her fall. For example, Dr. Colledge, who testified for ShopKo, stated that he believed Ms. Harris had an annular tear, which could be a sign of degenerative disc disease. He also testified that Ms. Harris's back pain was consistent with degenerative disc disease and suggested that her facet joint syndrome may have predated, and been aggravated by, her fall at ShopKo.

¶36 And there is also testimony indicating that these preexisting conditions contributed to Ms. Harris's pain and that they would have caused similar symptoms even in the absence of her fall at ShopKo. Dr. Rosenthal testified that the facet joint syndrome, which he had diagnosed Ms. Harris with after her fall, can be caused by degenerative disc disorder. Dr. Scuderi testified that it was "not unusual" for somebody of "Ms. Harris's age to have some neck and back pain." And Dr. Colledge testified that degenerative disc disease and Ms. Harris's prior "questionable sciatica" could have contributed to her symptoms.

¶37 But while this testimony suggests some connection between Ms. Harris's preexisting conditions and her current pain, there is no expert testimony in the record on the *extent* to which her conditions contributed to her pain, if at all. In fact, Dr. Colledge refused to offer such an opinion, stating that he "just report[s] the news" and "do[esn't] know where [the pain] comes from." He did testify that Ms. Harris "probably has a component of" both degenerative disc disease and facet disease or an aggravation of both. But this testimony does not provide a relative comparison between the proposed causes of Ms. Harris's pain. Without such testimony, the jury would have had to speculate as to any basis for apportioning damages, especially in light of Ms. Harris's expert testimony indicating that her fall at ShopKo caused her injury. We therefore conclude that there was insufficient evidence to support the Apportionment Instruction in this case. On remand, an apportionment instruction will be proper only if there is adequate expert testimony that Ms. Harris's preexisting back condition contributed to her injury and, if so, to what extent.

¶38 Although expert testimony allocating causation is necessary for an apportionment instruction on remand, the testimony need not opine on the exact percentage, if any, of the injury attributable to Ms. Harris's preexisting conditions.[43] In an ideal world, an expert would provide a precise estimation (e.g., "Fifty percent of the injury is attributable to the preexisting condition."). But we must account for the reality of medical uncertainty. An apportionment instruction will not be precluded if the testimony presents a reasonable range of percentages (e.g., "Forty to sixty percent of the injury is attributable to the preexisting condition.") or a useful nonnumeric description (e.g., "The vast majority of the injury is attributable to the preexisting condition.").[44] The determinative question is whether the expert testimony has supplied the jury with a nonarbitrary basis for apportioning damages.

¶39 Finally, ShopKo argues that even if the Apportionment Instruction was erroneous, it was harmless because the jury may have awarded Ms. Harris less than she requested on the ground that some of her medical care was not reasonably necessary. We disagree. An erroneous jury instruction is prejudicial if, taken "in context" with "the jury instructions as a whole,"[45] "it misadvised or misled the jury on the law."[46] The law on apportionment to

---

[43] *See Egbert*, 2010 UT 8, ¶ 37 ("sufficient evidence is not pure speculation, but neither does it require . . . precise, specific evidence" (internal quotation marks omitted)); *see also Sauer v. Burlington N. R.R. Co.*, 106 F.3d 1490, 1494 (10th Cir. 1996) ("The extent to which an injury is attributable to a preexisting condition or prior accident need not be proved with mathematical precision or great exactitude. The evidence need only be sufficient to permit a rough practical apportionment.").

[44] *See Egbert*, 2010 UT 8, ¶ 38 ("This apportionment may of course . . . be a rough apportionment" (internal quotation marks omitted)).

[45] *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 16, 977 P.2d 474 (internal quotation marks omitted).

[46] *Butler v. Naylor*, 1999 UT 85, ¶ 10, 987 P.2d 41; *see also Jensen*, 1999 UT 10, ¶ 16 ("[I]f the jury instructions as a whole fairly instruct the jury on the *applicable law*, reversible error does not arise merely because one jury instruction, standing alone, is not as

(Continued)

preexisting conditions was inapplicable because, as we have explained, the evidence did not provide the jury a nonarbitrary basis to apportion damages. Nothing in the jury instructions as a whole cured the erroneous instruction. Indeed, the Apportionment Instruction went so far as to impart a "duty" for the jury to apportion damages in this case whereas we have concluded that there was nothing beyond a speculative basis for doing so.

¶40 We also note, as did the court of appeals,[47] that we are obviously unable to know the precise basis of the jury's award. Nevertheless, given the substantial testimony at trial concerning Ms. Harris's preexisting conditions, ShopKo's arguments at trial concerning apportionment,[48] and the Apportionment Instruction itself, we find it "reasonably likely" that the jury apportioned damages to Ms. Harris's preexisting conditions.[49] Therefore, our "confidence in the jury's verdict is undermined" and reversal is required.[50]

**CONCLUSION**

¶41 The court of appeals' bright-line approach to analyzing preexisting conditions, focusing exclusively on whether a condition was symptomatic or asymptomatic on the date of the accident, risks holding defendants liable for more damages than they proximately caused. We therefore decline to adopt it. We also conclude that the Apportionment Instruction was erroneous and prejudicial because (a) the evidence failed to supply the jury with a nonarbitrary basis for apportioning damages, and (b) there is a reasonable likelihood the jury apportioned damages. On the facts of Ms. Harris's case, an apportionment instruction requires expert testimony on the portion of the plaintiff's injury that is

---

accurate as it might have been." (emphasis added) (internal quotation marks omitted)).

[47] *Harris*, 2011 UT App 329, ¶ 25.

[48] At closing argument, counsel for ShopKo argued that Ms. Harris was "asking to be compensated for conditions that existed before the accident, and under the law that's not proper."

[49] *See Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1378–79 (Utah 1995) ("An error is harmful if it is reasonably likely that the error affected the outcome of the proceedings.").

[50] *Tingey*, 1999 UT 68, ¶ 16.

attributable to her preexisting conditions. Accordingly, we affirm and remand to the court of appeals to order a new trial consistent with this opinion.

----